UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>    -against-<br><br>TOWN OF EAST HAMPTON HOUSING AUTHORITY, SEYMOUR SCHUTZ LLC and CATHERINE CASEY,<br><br>                          Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Civil Action No.<br>24-CV- 3426<br><br>(_____, J.)<br>(_____, M.J.) |

------------------------------------------------------------------------X

Plaintiff, the United States of America, by its attorney, BREON PEACE, United States Attorney for the Eastern District of New York, Megan J. Freismuth, Assistant U.S. Attorney, Of Counsel, for its complaint, alleges as follows:

### INTRODUCTION

1. The United States of America brings this action pursuant to the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.* (the Act), on behalf of K.E.M., a minor with a disability as defined by 42 U.S.C. § 3602(h)[1], and Kerry Morouney, K.E.M's mother. Ms. Morouney and K.E.M. reside in an apartment in a 50-unit multifamily complex known as Accabonac Apartments located at 316 Accabonac Road in East Hampton, New York that receives Department of Housing and Urban Development (HUD) Project-Based and Tenant-Based Section 8 Funding (the Property). The Property is a "dwelling" as defined by 42 U.S.C. § 3602(b). As described below, Defendants violated the Act's protections for people with disabilities when they refused to allow Ms. Morouney and K.E.M. to reside at the

---

[1] The Fair Housing Act uses the term "handicap," which is considered an antiquated term. This Complaint uses the term "disability" instead. That term has the same meaning as "handicap," as defined in the Fair Housing Act.

1

Property with K.E.M.'s emotional support animal.[2]

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3612(o).

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district and a substantial part of property that is the subject of the action is situated in this district.

4. The Attorney General is authorized by 42 U.S.C. § 3612(o) to commence this civil action to enforce the provisions of the Act.

## PARTIES

5. Plaintiff is the United States of America.

6. Defendant East Hampton Housing Authority (EHHA) is a municipal housing authority established under Section 563 of the New York State Public Housing Law to manage affordable housing in the town of East Hampton, New York, including the tenant-based housing choice voucher program. Defendant EHHA is the sole shareholder and owner of defendant

---

[2] Department of Housing and Urban Development Guidance states, "There are two types of assistance animals: (1) service animals, and (2) other trained or untrained animals that do work, perform tasks, provide assistance, and/or provide therapeutic emotional support for individuals with disabilities . . . ." HUD Office of Fair Housing & Equal Opportunity, FHEO-2020-01, Assessing a Person's Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act ("HUD Guidance") at 1.

Seymour Schutz LLC.

7. Defendant Seymour Schutz LLC is the owner of the Property.

8. Defendant Catherine Casey is EHHA's Executive Director.

## FACTS

9. K.E.M. has been diagnosed with multiple mental health and medical conditions, including major depressive disorder, generalized anxiety disorder, PTSD, insomnia with night terrors, irritable bowel syndrome, and eosinophilic esophagitis. K.E.M. was 14 and 15 years old during the time period relevant to this action.

10. The symptoms of K.E.M.'s conditions can be managed with the help of an emotional support animal. K.E.M.'s treatment providers recommend use of an emotional support animal to help manage those symptoms.

11. In 2018, Ms. Morouney and K.E.M. acquired a dog named Lucky to provide emotional support to K.E.M. Lucky comforted K.E.M. during and after panic attacks, helped K.E.M. sleep, and alerted Ms. Morouney when K.E.M. had a panic attack. Lucky allowed K.E.M. to manage his disabilities more successfully than he had before acquiring Lucky.

12. Ms. Morouney is a housing choice voucher (HCV) recipient. In or about February 2021, Ms. Morouney and K.E.M. were living in Utah preparing to move to New York. Ms. Morouney was in the process of having her voucher transferred to EHHA from her Utah HCV administrator so that she and K.E.M. could move into the Property.

13. While Ms. Morouney and EHHA employees were communicating about transferring the voucher, an EHHA employee stated by email to Ms. Morouney, dated February 12, 2021, "[p]lease be aware [EHHA] currently has a prohibition against emotional support dogs as pets at all properties (Only certify [sic] Service dogs)." The employee attached EHHA's Pet

3

Policy and a brochure titled "Service Animals in Public Accommodations" by The New York State Office of the Attorney General Civil Rights Bureau.

14. Ms. Morouney responded to Defendants' February 12, 2021 email by informing them that K.E.M. had an emotional support animal. She advised that K.E.M. "ha[s] a dog that has been in training to be a service dog" to assist with K.E.M.'s medical conditions and that the dog "has been a great tool to help [K.E.M.]."

15. In response, on February 12, 2021, Defendant Casey informed Ms. Morouney that "EHHA does not permit dogs unless they are bona fide service animals" and that "[e]motional support or comfort dogs do not qualify for reasonable accommodation under the law [because] they are considered pets."

16. The EHHA written policy regarding animals in EHHA properties explicitly permits a reasonable accommodation only for persons with disabilities who require use of a "service animal to assist them with certain tasks."

17. Although the EHHA written policy is silent with respect to emotional support animals, Defendants interpret their policy to exclude reasonable accommodation for persons with disabilities requiring the use of an emotional support animal.

18. On February 15, 2021, Ms. Morouney submitted her application for the apartment, including documentation from K.E.M.'s medical providers regarding his disabilities. Ms. Morouney also included a letter from K.E.M.'s treating physician in Utah dated December 2, 2019 that stated "[K.E.M.] has been a patient of mine since July 2019. He has multiple diagnosed conditions that an emotional support animal can help with. He has pets that have been very beneficial to him as emotional support animals. Please allow emotional support animal in the airport and on the airplane with [K.E.M.]."

19. On or about March 9, 2021, Defendant Casey advised an EHHA employee by email that "[Ms. Morouney] has been informed the emotional support dog is a hard 'no'."

20. As a result of Defendants' refusal to allow K.E.M. to keep his emotional support dog, in March 2021, while Ms. Morouney and K.E.M. were traveling from Utah to New York, they boarded Lucky with a friend in Illinois.

21. On or around April 2, 2021, Ms. Morouney and K.E.M. moved into the Property.

22. Without Lucky, K.E.M. experienced an increase in the symptoms of his disabilities. Within a week of moving into the Property, Ms. Morouney called the police to inquire about the availability of a 24-hour crisis hotline because K.E.M. had had a "few mental meltdowns."

23. On May 13, 2021, Ms. Morouney again requested that Defendants provide her and K.E.M. a reasonable accommodation to keep Lucky. She noted that the symptoms of K.E.M.'s disabilities were "exacerbated" without Lucky. Ms. Morouney attached letters from six of K.E.M.'s physicians documenting K.E.M.'s conditions. One of the letters, which was dated May 4, 2021 and was from K.E.M.'s treating physician in Utah, specifically advised that K.E.M. "would benefit from having a service animal."

24. Defendants nonetheless continued to deny Ms. Morouney's reasonable accommodation request. In a letter dated May 14, 2021, Defendants stated that "[t]he documentation submitted does not rise to the level of qualifying for a reasonable accommodation" and that "[r]easonable accommodations are made for disabled persons who depend upon a service animal to perform a specific task that alleviates the disability." The letter also noted that Ms. Morouney had indicated in her HCV transfer paperwork that no one in the household had a disability or owned any pets. Defendants warned that keeping a dog in the unit would jeopardize Ms. Morouney and K.E.M.'s tenancy.

25. On April 4, 2022, an award letter from the Social Security Administration (SSA) substantiating K.E.M.'s disability and additional letters from K.E.M.'s physicians dated January 5 and February 18, 2022, were sent to Defendants' counsel.  Defendants still did not agree to accommodate K.E.M.'s disability.

26. On September 30, 2022, HUD sent additional letters from K.E.M.'s physicians, dated July 13 and 14, 2022, to Defendants' counsel.

27. On October 5, 2022, 16 months after Ms. Morouney filed a complaint with the Department of Housing and Urban Development, Defendants finally agreed to allow K.E.M. to reside with Lucky at the Property.

28. During the 19 months that K.E.M. was separated from Lucky, K.E.M.'s mental health and gastrointestinal symptoms got worse.  He suffered, among other things, increased night terrors, panic attacks, insomnia, nauseousness, vomiting, and decreased appetite.  As a result, K.E.M. missed significant time from school.

29. Many of K.E.M's mental health and physical symptoms diminished after Lucky returned to live with K.E.M.  K.E.M. also has become more social and is performing better in school.

30. Guidance issued by HUD in 2020 and in effect during the events described above states, "Persons with disabilities may request a reasonable accommodation for service animals and other types of trained or untrained assistance animals under the Fair Housing Act," HUD Guidance at 1, and advises, "Assistance animals are <u>not pets</u>," *id.* at 3.  "Before denying a reasonable accommodation request due to lack of information confirming an individual's disability or disability-related need for an animal, the housing provider is encouraged to engage in a good-faith dialogue with the requestor . . . ." *Id.* at 14.

## HUD ADMINISTRATIVE PROCESS

31. On June 9, 2021, Ms. Morouney timely filed a complaint with the United States Department of Housing and Urban Development (HUD) against Defendants.

32. Pursuant to 42 U.S.C. § 3610(a) and (b), the Secretary of HUD conducted and completed an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report. Based upon the information gathered in the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that illegal discriminatory housing practices had occurred.

33. On April 9, 2024, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging the above-named Defendants with engaging in unlawful discrimination in violation of the Fair Housing Act.

34. On April 10, 2024, Ms. Morouney elected to have the claims asserted in the HUD Charge resolved in a federal civil action pursuant to 42 U.S.C. § 3612(a).

35. On April 10, 2024, an Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court and terminated the administrative proceeding on Ms. Morouney's complaint.

36. Following this Notice of Election, the Secretary of HUD authorized the Attorney General to commence this civil action pursuant to 42 U.S.C. § 3612(o).

## FIRST CLAIM FOR RELIEF

37. The United States repeats and realleges the allegations contained in paragraphs 1 through 36 as if set forth fully herein.

38. Section 804 of the Act, 42 U.S.C. § 3604, provides that it shall be unlawful

(f)(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person . . . . a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available;

(f)(3)(B) For purposes of this subsection, discrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]

39. Through the actions described above, Defendants have violated the Fair Housing Act, 42 U.S.C. § 3604(f)(2) and (f)(3)(B), by refusing to make reasonable accommodations to their rules, policies, practices, or services, when such accommodations were necessary to afford Ms. Morouney and K.E.M. an equal opportunity to use and enjoy their dwelling.

40. As a result of Defendants' conduct, Ms. Morouney and K.E.M. are "aggrieved" persons as defined in 42 U.S.C. § 3602(i) and have suffered injuries, including, but not limited to, out of pocket expenses and emotional distress.

41. Defendants' discriminatory actions were intentional, willful, and taken in disregard of Ms. Morouney's and K.E.M.'s rights.

## SECOND CLAIM FOR RELIEF

42. The United States repeats and realleges the allegations contained in paragraphs 1 through 41 as if set forth fully herein.

43. Section 804 of the Act, 42 U.S.C. § 3604, provides that it shall be unlawful

(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

44. Through the actions described above, Defendants have violated the Fair Housing Act, 42 U.S.C. § 3604(c), by making, printing, or publishing, or causing to be made, printed, or

published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on disability.

45. As a result of Defendants' conduct, Ms. Morouney and K.E.M. are "aggrieved" persons as defined in 42 U.S.C. § 3602(i) and have suffered injuries, including, but not limited to, out-of-pocket expenses and emotional distress.

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court enter an ORDER:

1. Declaring that Defendants' policies and practices, as alleged in this Complaint, violate the Fair Housing Act;

2. Enjoining Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with them, from:

   (a) discriminating in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of disability, in violation of 42 U.S.C. § 3604(f)(2)(A);

   (b) refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford persons with disabilities an equal opportunity to use and enjoy their dwellings, in violation of 42 U.S.C. § 3604(f)(3)(B);

   (c) making, printing, or publishing, or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on disability in violation of 42 U.S.C. § 3604(c); and

    (d)    failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future.

3. Awarding Ms. Morouney and K.E.M. monetary damages under 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1) for injuries caused by Defendants' violations of the Act; and

4. Awarding such additional relief as is just and proper.

Dated: Central Islip, New York
       May 9, 2024

                                            BREON PEACE
                                            United States Attorney
                                            Eastern District of New York
                                            610 Federal Plaza
                                            Central Islip, New York 11722

                              By:    */s/ Megan J. Freismuth*
                                            Megan J. Freismuth
                                            Assistant United States Attorney
                                            631-715-7905
                                            Megan.freismuth@usdoj.gov